### COLUMBUS (city) v BORROR

Ohio Appeals, 2nd Dist, Franklin Co

No 2615. Decided April 18, 1936

John L. Davies, City Attorney, Columbus, E. W. McCormick, Asst. City Atty., Columbus, and Don W. Wiper, Special Counsel, Columbus, for plaintiff in error.

Knepper, White, Smith & Dempsey, Columbus, for defendant in error.

## OPINION

By HORNBECK, J.

The defendant in error was the plaintiff in the trial court and the plaintiff in error was the defendant. We refer to the parties as they appeared in the trial court.

The action was for damages suffered by reason of a claimed continuing nuisance caused by the operation of the defendant of its sewage plant in the City of Columbus, by reason of which there was thrown into the water of the Scioto River untreated or partially treated sewage flowing through and along the banks of land owned by the plaintiff, at times overflowing and causing deposits of sewage upon said land. The land which the plaintiff owned along the Scioto River extended for a distance of a mile and a quarter but the lowlands immediately under consideration in this case comprised approximately 100 acres. There is some variance in the testimony as to the extent to which the land would be overflowed by the river, the difference covering a range from 80 to 100 acres. The land in question had been owned by the plaintiff since 1904 and since 1917 had been operated by the son of the plaintiff under the management and direction of the plaintiff and upon a profit-sharing basis, by the terms of which the plaintiff received 50% of the annual profits from the land and his son, the tenant, 50% thereof. The damages claimed were for the

loss and diminution in value of the use of approximately 100 acres of the lowland along the river and did not include any damage by reason of noisome or offensive odors. The period of time during which damages were claimed was from May 3, 1929 to December 13, 1934, the added period of time being covered by a supplemental petition.

Upon the pleadings several issues were drawn but we shall only discuss those which are germane to the errors claimed in this court. In addition to the facts which we have heretofore stated the evidence developed that on and prior to a time varying from 1912 to 1916 the Scioto River flowed through the lands of plaintiff as a clear stream of water. After the flood of 1913 there was some change in the river bed and subsequent thereto the water which overflowed the lands of the plaintiff, generally during spring freshets, was backwater, which came onto the land gradually and so receded. It is testified that the effect of the deposit left by these overflowing waters was to fertilize the lowland and render it highly productive. Beginning at a period approximately in 1915 the water of the Scioto River began to be contaminated by the contents of the sewage disposal plant of the City of Columbus, thrown into the stream and moving with the current. The testimony for the plaintiff defines the character of the content which was thrown onto the soil when the river overflowed as untreated or partially untreated sewage; that in appearnace it was a dark, slimy, oily substance, something like soft soap, causing the bottom of the river to be very slippery; that when it would cover the ground and recede it would have a jelly-like substance as much as one-half inch thick, and that balls of black stuff as big as a hat would float along the edge of the stream and on the banks thereof; that this sediment, when left upon the earth, would form a thick covering of a black and mixed color; that when it dried up it became very hard.

It was the claim of the plaintiff, and the evidence tends to support it, that the effect of this deposit was to render the soil unfertile to a marked degree. It also appears, and this is not contradicted, that domestic animals would not, in the spring or summer time, drink of the water in the stream; that there had been no fish, except some carp, in the river for many years.

There is some testimony in the record, on behalf of the defense, to the effect that the material which comes from the sewage plant is beneficial to the soil. Much of this testimony, however, disclosed that the product which it was claimed built up the soil was not of the character of the deposit which was placed upon the lands of plaintiff by the overflow of the river. In any event, the effect of the substance which was carried onto the land by the overflowing river was a question of fact which eventually was resolved against the defendant.

During the progress of the trial testimony was accepted showing the usage to which the land had been put before the deposit from the river had rendered it less fertile. It appeared that in one season wheat had been planted on the lowland and had matured to a height of several inches when the water came up and over it, resulting in its complete loss. It also appeared that in the years prior to the time for which damages were claimed the lowlands were at times put in pasture, and that they were suitable for pasturage, both because of the grass which they would grow and because of the accessibility to the stock of good drinking water from the stream.

Witnesses were permitted to testify as to the rental value of the land if used as pasture, both by the acre and by the head of animals to be pastured. It also appeared that as an average for many seasons prior to 1929 the 100 acres of lowlands produced on an average of 80 bushels of corn per acre, and that for the years during which damages were claimed the acreage which could be planted in corn was sharply reduced and upon the land planted to corn the average had been reduced to 50 bushels per acre. There was no showing of the value of the wheat crop which it was claimed was lost by reason of the overflowing, polluted water.

The defendant, at the conclusion of the plaintiff's case, moved the court to strike from the record all evidence relative to the value of plaintiff's bottomlands for pasture purposes, for the reason that during the period of time involved in this suit and prior thereto, such bottomlands had not been devoted to pasture lands but primarily to the raising of corn. This motion was overruled, to which action exception was noted.

After the defendant had introduced its testimony it moved the court to withdraw from the consideration of the jury any claim for damages by reason of loss of fodder, because there had been no evidence offered as to the value of the fodder and

also to withdraw from the jury any claim for damages resulting from loss of wheat for the reason that no evidence had been offered as to the value of the wheat.

The cause was submitted to the jury, which returned a verdict for the plaintiff in the sum of $2500.00. After motion for new trial was filed and overruled judgment was entered on the verdict and from this judgment error is prosecuted.

There are nine grounds of error assigned. The first three grounds of error relate to the admission of testimony touching the possibility of use of the land for pasturage purposes and the value of such use. The fourth ground relates to the refusal of the court to strike all evidence from the record touching loss of fodder, because the value of the fodder was not established. The fifth ground relates to the refusal of the court to withdraw any claim for damages resulting from loss of wheat because no evidence was offered as to the value of the wheat. The sixth ground assigns as error the admission of evidence as to the amount of crops raised on the bottomlands in years prior to the time for which damages were claimed in the petitions. The seventh ground is that the verdict of the jury was contrary to the weight of the evidence. The eighth, that the diminution in the amount of crop production on the land in question in the years when the evidence shows there was a diminution, or a crop below normal, was not caused by any act of the City of Columbus but from other causes. The ninth, that the amount of the verdict was greatly in excess of the damages shown by the evidence.

We shall discuss generally the first five grounds of error. A careful reading of this record, in conjunction with the charge of the trial court, is convincing that this case was well tried, both by counsel and the trial judge. In the very nature of things it is impossible in a cause such as the one upon which the claim of the plaintiff is grounded, to establish evidential facts with technical nicety of proof. The ultimate question for the determination of the jury was the diminution in value of the use of the lands, which resulted to the plaintiff by reason of the maintenance of the continuing nuisance by the defendant. Any testimony which would throw light upon this question was competent and relevant. The primary obligation of proof upon the plantiff was to show that the water overflowing upon the bottomlands was

polluted by the city of Columbus and that the character of this pollution was such that it caused him damage. It is urged that because it did not appear that the lands in question had been used for pasture purposes immediately prior to 1929 or possibly for a few years before that it was not proper to show what the value of the use of such lands for pasture purposes would have been from 1929 to 1934, inclusive. The purpose of the proof touching the use of this land for pasture purposes was grounded upon the claim that it had customarily been so used and but for the pollution which came onto the lands could and probably would have been used for pasture purposes; that this was one use to which it would have been put. It was a permissible inference to say that but for the nuisance one of the uses to which this land could have been adapted was to sow it in pasture, but that because of the damage to the soil it was no longer possible to use it for pasture purposes. There was evidence going to the value of the use of this land had it been put in pasture.

We are cited to Rumsey et v N. Y. and New Eng. R. R. Co., 15 L.R.A., 618, as authority for the proposition that the court erred in admitting any evidence respecting the use or adaptability of the lands for pasturage purposes. The distinguishing difference between the facts which prompted the pronouncement in the cited case and in the instant case may be found in the opinion of the cited case, wherein it is said:

"It does not appear that the use of the premises as a brickyard was discontinued in consequence of the acts of the defendants, and that fact could not well be established, for it ceased to be used for such purposes long before the defendant's road was built."

The distinction also appears in that part of Norwood v Sheen, infra, which is cited at page 492:

"The diminished rental or usable value of property is to be determined according to the existing condition of the premises, and not with reference to what the usable value might have been had they been put to different uses; and so, damages can not be recovered for the loss of the use of property for a particular purpose where it appears that the plaintiff did not intend to use it for that purpose."

Here it fairly appears that at least some of the acreage would have been used for

pasture but for the fact that it was rendered unfit by reason of the ██ acts of the defendant. The loss of the crop of wheat was proper as supporting the claim that the effect of the polluted water upon any crop, including wheat, was to destroy it. No value was placed upon the loss of this wheat crop and under the charge of the court we would not be justified in saying that the jury gave any consideration to the loss of the wheat from the standpoint of value, because it was without any measuring stick upon this question. The same thing can be said of the fodder. The purpose of this testimony, like that touching the loss of the wheat crop, was to show the effect of the contaminated water upon any growing crop; that it made the fodder unfit to be eaten.

Objection is assigned in the sixth ground of error to the admission by the court of testimony relating to the kind of crops and the extent of yield from the land in question in the years prior to 1929. If this class of testimony is not admissible or pertinent to the ultimate question to be determined in this ██ cause we are at loss to know how such proof could be made, except upon technical analysis of the soil. Any evidence which in its natural and logical effect will lend some assistance in a probative way to the proper determination of controverted issues of fact is recognized as competent evidence. Of course, seasonal conditions, sun, rain, heat, drought and many other elements and circumstances enter into crop production, but the way that this can be considered and brought to the attention of the jury is by cross-examination, which brings to the attention of the jury all of the elements which may have influenced the decreased yield in crops on the land in question. Having considered all of these facts, in conjunction with the changed condition of the overflow of water produced by the continuing nuisance, the jury was in position to make determination of the issue, namely, whether or not the nuisance caused the damage and if so how much was that damage. Likewise, going to the extent of the loss of use, it must be presumed that the jurymen understood that they could not consider impaired use value during the same season for loss of corn and loss of pasture and it was for them to say, under the benefit of all the evidence, touching the impairment of the value of the use of the land, to what extent it had been reduced by the maintenance of the continuing nuisance on the part of the defendant.

We might observe that counsel for the city availed themselves of the benefit of cross-examination with consummate skill and brought to the attention of the jury every fact, independent of the effect of the nuisance, which might operate to reduce the yield of the crops on the lowlands of the plaintiff.

As we view this evidence it is susceptible of the interpretation that the effect of the polluted water upon the land ██ was continuing; that, although the injury resulting from the deposit upon the land would be greater if the overflow was greater and more frequent, yet the deleterious effect might continue from one season to another, though there had been no overflow the second or subsequent season. The damage caused by the substance deposited upon the land affected the ingredients in the soil and such effect was continuing.

In the case of **Jackson v Campbell, 17 Abs 32**, this court had before it the question of the prejudicial effect of the admission of rental value of land, the use of which it was claimed had been destroyed or impaired by the overflow from a polluted stream. We gave consideration to the **City of Norwood v Sheen, 126 Oh St, 482**, and the cases therein cited. We held in the Jackson case, following Norwood v Sheen, that rental value is helpful in fixing the value of use and occupancy; that in the case under consideration it was difficult to see how practical application of the rule could have been made to better advantage than by accepting testimony touching the rental value of the lands involved. Such evidence has ██ probative effect and is of assistance to a jury in determining the ultimate question to be answered in its verdict. Especially is this true if the charge of the court, as in the instant case, carefully defines the issues and the measure of damage.

We find no merit in the grounds of error, Nos 7 and 8, namely, that the verdict of the jury was contrary to the weight of the evidence and that the diminution in the amount of crop production on the land in question in the years when the evidence shows there was a diminution, or a crop below normal, was not caused by any act of the City of Columbus, but from other causes. The 9th ground of error is that the amount of the verdict was greatly in excess of the amount of the damages shown by the evidence.

It fairly appears that upon one item

alone, namely, the diminution in the value of the use of the land represented by the average in corn production, the jury would have been well within the confines of the evidence in returning the verdict in the sum represented thereby.

Counsel for the city urge that of the approximate 100 acres of lowlands under consideration during the years covered by the parties, only one-half of the land was farmed, and that therefore the damage could not have reached any such sum as is represented by the verdict. But the difficulty with that contention is that it disregards an abundance of testimony to the effect that under normal conditions, if the water in the river was pure, unadulterated and unpolluted the nominal effect of the backwater incident to spring freshets was to enrich the overflowed land to an extent that it could be planted in corn every season. But it is urged that there were seasons when the water did not overflow the land. This is true under the evidence, but the testimony of the plaintiff's witnesses goes to the loss in tillable acreage and the average shrinkage in crops. It is true, as contended by counsel for the city, that 50 bushels per acre of corn is a yield, under all ordinary conditions to be considered a good crop. However, every case must be determined upon the weight of the evidence and here it is testified, and not seriously contradicted, that it was not unusual to average 80 bushels per acre of corn on these lowlands along the river and that as much as 25 acres thereof produced, during certain seasons, 100 bushels to the acre. If this testimony was exaggerated or not in keeping with the fact respecting lowlands along the Scioto River similarly situated, it was the subject of proof and if the plaintiff's witnesses were exaggerating or misstating their testimony could have been countervailed by evidence to the contrary. We do not have the advantage of answers to special interrogatories which could have been submitted to the jury had the defense desired.

In making nice determination of the amount of plaintiff's damage, the cost of the seed corn should have been offered in evidence because plaintiff was required under the arrangement with his son to furnish the seed. This amount, however, would be so small as to require no change in the amount of the verdict.

It appearing that the verdict can be supported upon the depreciation in value of the use of the land in loss in corn crops alone, we are satisfied that it should not be disturbed. We are frank to say that had we been acting as tryers of the facts we would, in probability, have made a finding in lesser amount, but the result reached is not beyond the proper interpretation of plaintiff's evidence and was well within the province of the jury.

The charge of the court, in our judgment, was very fair to both parties and in its entirety carefully informed the jury of the legal principles controlling their determination of the controverted questions of fact.

We find no error in this record prejudicial to the defendant, requiring a reversal of the judgment. It will, therefore, be affirmed.

BARNES,, PJ, and BODEY, J, concur.